UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON GRANT SANDERS,<br><br>            Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. 1:21-cv-00204-BAM<br><br>**ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>(Doc. 13)<br><br>FOURTEEN-DAY DEADLINE |

**INTRODUCTION**

Plaintiff Vernon Grant Sanders ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations. (Docs. 13, 16-17.)

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

record and is based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on January 18, 2018. AR 16.[1] Plaintiff alleged that he became disabled on July 25, 2016, due to back problems, knee problems (with both knees), sinus problems, hand problems (with both hands), abdominal problems, chronic prostatitis, heart problems, and high blood pressure. AR 67. Plaintiff's application was denied initially and on reconsideration. AR 80, 81-96. Plaintiff requested a hearing before an ALJ, and ALJ Kathryn Burgchardt held a hearing on June 4, 2020. AR 34-65. ALJ Burgchardt issued an order denying benefits on the basis that Plaintiff was not disabled on June 22, 2020. AR 13-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-7. This appeal followed.

### June 4, 2020 Hearing Testimony

The ALJ held a telephonic hearing on June 4, 2020. AR 34-65. Plaintiff appeared with his attorney, Jared Cook. *Id.* Bruce Magnuson, an impartial vocational expert, also appeared and testified. AR 59-64.

In response to questions from the ALJ, Plaintiff testified that he was born on October 27, 1957, and has a high school education. AR 39. Following high school, Plaintiff received a certificate in technical drawing and drafting. AR 40. Plaintiff testified that he was not currently working and had not worked since his previous position at a brewery but could not recall the final date he had worked there. AR 40-41. Plaintiff testified that he had not received any payment after he stopped working, including vacation pay or sick pay. AR 41. The ALJ noted he was curious regarding the date because he stated that the record showed that in 2015 Plaintiff worked full-time for the year and earned $12,335 while in 2016 he earned $11,403 despite apparently stopping work in July 2016. *Id.* Plaintiff testified that he did not receive Unemployment or Workers' Compensation. AR 43.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that he was single, did not have children or pets, and lived in a house by himself. AR 44. Plaintiff testified that he paid his bills by first exhausting his savings and maxing out his credit cards, then borrowing money from his family and two friends. *Id*. He further testified that he did not receive any food stamps or other benefits, but was on Medi-Cal. AR 45. Plaintiff testified that he sees three to six friends approximately once a week. *Id*. When he would see his friends, he typically went to their house or would walk around with them. AR 46. Plaintiff testified that he also watched television and would sometimes read but had less focus than he used to have. AR 46-47.

Plaintiff testified that he had a driver's license and would drive around. AR 47. Plaintiff also testified that he would walk around. *Id*. Plaintiff testified that he was not a smoker and stopped drinking approximately one year prior to the hearing due to stomach and sinus issues. AR 48. Plaintiff testified that he did not use marijuana or illegal drugs. AR 48-49. Plaintiff further testified that he had not been to church, to the movies, or out to eat in the four years prior to the hearing. AR 49.

Plaintiff testified that he worked part-time at Archie's Hardware during 2005, 2006, and 2007. *Id*. The ALJ then noted that for Plaintiff's work at Archie's Hardware, the SGA for the year 2007 was $10,800, so the position would have constituted full-time work. AR 50. At Archie's Hardware, Plaintiff worked as a cashier, would stock shelves, and check in orders when they arrived. *Id.*

Plaintiff testified that he worked part-time for Kern River Brewing Company for some years beginning in approximately 2007 and then worked full-time from 2015 to 2016. AR 50-51. Plaintiff testified that during the period from 2007 to 2016, he was only working at Archie's Hardware or Kern River Brewing Company. AR 51.

Plaintiff testified that he washes his own laundry, does his own grocery shopping, and does the cleaning, but noted that the cleaning is not up to his own standards. AR 52. Plaintiff prepared his own food for himself and cooked for himself. *Id.* Plaintiff washes dishes for himself. *Id.* Plaintiff further testified that he used to be able to do yard work more consistently but now does it "off and on" and would try "to get some raking in" but would stop if his hands began to hurt. AR 52-53. He testified that he was not currently able to take care of his yard to the standard he would like and would let some things go. AR 53.

In response to questions from Plaintiff's attorney, Plaintiff testified that his biggest problems were his back, his knees, and his hands. AR 53-54. Plaintiff testified that he has pain in his lower back and had a double discectomy laminectomy and surgery at L4 and L5. AR 54. Plaintiff testified that the back surgery was "years ago." *Id.*

Plaintiff testified that he would not sit for too long because his back would begin to ache, so he would go back and forth from sitting to standing. *Id.* Plaintiff testified that he could sit for approximately 30 minutes at a time. *Id.* Plaintiff testified that he could stand in place for approximately 15 minutes and could "easily do a mile on flat ground" walking. AR 55. Plaintiff testified that he was not "comfortable lifting hardly any weight" because of his knees, and the heaviest item he could lift was a cast iron Dutch Oven. *Id.*

Plaintiff testified that he uses two different sticks for walking depending on how bad his knees hurt and would typically use walking sticks "a couple of times a week." AR 55-56. Plaintiff did not use a back brace but used two knee braces. AR 56. Plaintiff testified that his hands had been getting weaker, he had daily tremors, and did not trust the use of his hands. *Id.* The tremors typically occurred earlier in the day and would also be triggered by him being anxious about something. *Id.* He testified that he had dropped things in the past but had learned to grab things with two hands and could do buttons and zippers. AR 56-57. Plaintiff testified that he would use ice packs and anti-inflammatories but did not use prescription pain medication. AR 57. He testified that he took heart medication, blood pressure medication, prostate medication, allergy medication, and irritable bowel syndrome medication. *Id.* He further testified that he felt dizzy as a side effect of his prostate medication. *Id.* Plaintiff typically would lie down during the day but did not sleep or take naps. *Id.* He testified that he would lie down approximate three to four days per week. AR 58.

In response to questioning from the ALJ regarding medical records of Plaintiff's alleged impairments, Plaintiff's attorney noted Exhibit 1F included an MRI of Plaintiff's knee from December 2015 that showed a complex meniscal tear and some tricompartmental degenerative joint disease. AR 58. Plaintiff's attorney stipulated to the qualifications of the Vocational Expert. AR 59.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. AR 59-64. The VE first summarized Plaintiff's past work as "salesperson general hardware, 279.357-050, light, 4" and

4

"bartender, 312.474-010, light, 3." AR 60. The ALJ then asked the VE hypothetical questions. *Id*. For the first hypothetical, the ALJ asked the VE to consider an individual the same age, education, and past work experience as Plaintiff; who could only lift or carry up to 25 pounds frequently and 50 pounds occasionally; could stand or walk with normal breaks for a total of six hours in an eight hour work day; could sit with normal breaks for a total of six hours in an eight hour work day; could perform pushing and pulling motions with upper, lower extremities within the weight restrictions given; and could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching; could perform postural activities frequently and that would be climbing ramps or stairs, balancing, stooping, crouching, kneeling, and crawling. AR 60-61. In this hypothetical, the ALJ limited the individual to frequent bilateral handling and fingering and frequent climbing ladders, ropes, or scaffolds. *Id*. The ALJ further added that the individual would require reasonable access to a bathroom on the same floor as the workstation. AR 61. The VE testified that both of the past jobs would remain. *Id.*

For the second hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and past work experience as Plaintiff, and with the same restrictions as the individual in the first hypothetical except this individual could only lift or carry up to ten pounds frequently and 20 pounds occasionally. *Id.* The VE testified that the past work would still remain. *Id.*

For the third hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's same age, education, and past work experience and with the same restrictions as the individual in the second hypothetical, but added restrictions that the individual could only lift or carry less than ten pounds frequently and up to ten pounds occasionally and could stand or walk with normal breaks for a total of only two hours in an eight hour work day but could still sit with normal breaks for a total of six hours in an eight hour work day. AR 61-62. The VE testified that this would be sedentary and past work would be eliminated and past skills would not be transferrable. AR 62. The VE then testified that his testimony was consistent with the Dictionary of Occupational Titles and its companion publications as well as with over 30 years of experience doing labor market research. AR 63.

In examination of the VE, Plaintiff's attorney asked the VE to assume the restrictions in the second hypothetical and to add the restriction that the individual could only perform handling and

5

fingering bilaterally occasionally as a result of a tremor. *Id.* The VE testified that this would eliminate past work and that there would be no transferable skills. *Id.*

Plaintiff's attorney further asked about employers' the tolerance for absenteeism and the expectation for on-task behavior based upon the VE's experience, and the VE answered that employers may tolerate absenteeism one to two days per month but would not tolerate this over a few months. AR 63-64. The VE further testified that employers typically do not tolerate over ten to fifteen percent of off-task time. AR 64.

In closing, Plaintiff's attorney highlighted Exhibit 7F regarding Plaintiff's essential tremor, which would affect manipulative limitations, as well as evidence of degenerative changes throughout his body shown in Exhibits 10F-6, 10F-7, 1F-1. *Id.* Plaintiff's attorney argued that Plaintiff would grid at light with sedentary or with tremor issues. *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 13-31. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 25, 2016, the alleged onset date. AR 18. The ALJ identified the following severe impairments: degenerative disc disease of the lumbar spine and osteoarthritis of the bilateral knees. *Id*. The ALJ additionally evaluated and discussed other impairments that did not constitute severe medically determinable impairments, including prostatitis, irritable bowel syndrome, hypertension, hyperlipidemia, diverticulosis of the colon, hand tremors, sinus problems, but found that objective evidence showed these impairments did not cause more than mild or transitory symptoms or limitations. AR 18-20. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 20-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: Plaintiff could only

lift or carry up to ten pounds frequently and 20 pounds occasionally; Plaintiff could stand or walk with normal breaks for a total of six hours in an eight-hour workday; Plaintiff could sit with normal breaks for a total of six hours in an eight-hour workday; Plaintiff could perform pushing and pulling motions with his upper and lower extremities, within the weight restrictions given; Plaintiff could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, however, handling and fingering bilaterally were limited to only frequent; Plaintiff could perform postural activities frequently, including climbing of ramps or stairs, balancing, stooping, crouching, kneeling, and crawling; could climb ladders, ropes, or scaffolds frequently; and Plaintiff would require reasonable access to a bathroom, defined as on the same floor as the workstation.  AR 21.  In doing so, the ALJ considered all of Plaintiff's symptoms, the medical opinions, and prior administrative medical findings.  AR 21-25.

With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff could perform past relevant work as a salesperson, general hardware (DOT 279.357-050, light, SVP 4, semiskilled); and bartender (DOT 312.474-010, light, SVP 3, semiskilled).  AR 25.  The ALJ therefore concluded that Plaintiff had not been under a disability from the alleged onset date of July 25, 2016 through the date of the ALJ's decision.  AR 26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

7

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

Plaintiff contends that the ALJ erred by improperly discrediting Plaintiff's subjective complaints and symptom testimony. (Doc. 13 at 9-15, Doc. 17 at 3-5.)

**A. Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 13 at 9-15; Doc. 17 at 3-5.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 22. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id.* The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In assessing Plaintiff's statements and subjective complaints, the ALJ noted:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The medical evidence of record supports a finding that the claimant's RFC is limited due to advanced degenerative arthropathy in his right knee, and mild degeneration in his lumbar spine. While treatment has been minimal, the record shows a history of complaints, particularly with respect to the claimant's knees… A January 2018 physical exam was benign, apart from left knee tenderness. He was wearing a brace on the left knee. (Ex. 7F/11)…
>
> A current x-ray showed mild disc space narrowing at L4-L5 and L5-S1 consistent with early degenerative disease. The claimant had not had any injections after his back surgery, and he was able to walk a mile for exercise at least 4 to 5 times per week. He reported being able to sit 45 to 60 minutes at a time. Bending and lifting exacerbated his pain. He also had knee pain, right greater than left. He never had injections in his knees, but had a history of two right knee surgeries 35 years prior. He was able to climb stairs using railings, but did not necessarily need to use railings. The claimant reported being independent in activities of daily living. (Ex. 10F/1-2)…
>
> On examination, the claimant was able to easily get on and off the table, and easily bend at the waist to take off his shoes and socks. He demonstrated good dexterity and flexibility. The examination was grossly normal, apart from some trace crepitus in both knees. He had 5/5 strength in the bilateral upper and lower extremities, including grip. Straight leg raise tests were negative seated, and minimally positive supine bilaterally

> at 90°, with the claimant having just a bit of pulling in the low back, without radiation. (Ex. 10F/2-4). He complained of ongoing bilateral knee pain, left greater than right, in September 2019, and requested cortisone injections. Medial joint line tenderness was noted in both knees. He was referred to orthopedic surgery for evaluation. (Ex. 14F/39-40)…
>
> At the hearing, the claimant testified that he a [*sic*] single, and lives alone in a house. He is able to run his household, and does laundry, shops, cooks, and does dishes. He cleans, but states that he does not do so very well. He is able to yard work off and on, with difficulty. He watches television, and likes to walk. He reads, but says his focus is not very good. He has 3 to 6 friends that he sees once per week, visiting in their homes or taking walks together.

AR 22-23. The ALJ further noted that, "taken as a whole, the evidence of record, including documentation of the claimant's good ability to perform activities of daily living and his ability to walk 1 mile 4-5 times per week, does not support greater limitations than those listed in the above RFC." AR 25; 46 (Plaintiff testifying that he walks around with friends); 47 (Plaintiff testifying that he walks around); 55 (Plaintiff testified that he "can easily do a mile on flat ground.")

First, the ALJ noted the inconsistences between Plaintiff's symptom statements and objective medical evidence in the record. *Id.* Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In discussing the restrictions in the residual functional capacity, the ALJ pointed to objective medical evidence in the record, comparing Plaintiff's complaints with the medical record. For instance, the ALJ noted that a January 2018 physical exam revealed relatively normal findings apart from left knee tenderness and a right knee meniscal tear. AR 402 (Mostly "Normal" findings and Plaintiff described the pain as "1/10"). The ALJ also noted that Plaintiff had an April 25, 2018 X-Ray showing mild disc space narrowing and consistent with early degenerative disc disease, but that Plaintiff had not had any injections and reported that he was walking 4-5 times per week. AR 23, 73, 437 ("He had a somewhat recent CT scan showing disc disease. He has not had any injections after the surgery. He walks a mile and does this fairly often for exercise at least 4-5 times a week."). The ALJ further noted observations from an April 25, 2018 exam, in which Plaintiff "was easily able to get up

10

from a chair in the waiting room and walk at a normal speed back to the exam room without assistance. He sat comfortably and was easily able to get on and off the exam table and easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility." AR 23, 438.  At the same exam, the straight leg raising test was "negative seated" and "minimally positive supine bilaterally at 90 degrees with the claimant having just a bit of pulling in the low back without radiation." AR 23, 440 (The physician additionally noted "Knee exams bilaterally reveal no redness, heat, swelling, tenderness, effusions or ligamentous laxity. There is some trace crepitus in both knees. There are large scars consistent with the fairly old surgery on the right knee.").  Accordingly, the ALJ properly considered medical evidence as one factor in discounting Plaintiff's testimony.

Second, the ALJ noted that Plaintiff:

> acknowledged being generally able to perform personal care tasks, but stated that he wore slip on sandals, was cautious in the shower, and could not shave because of his hand shaking. He was able to prepare meals, but had difficulty with housework. He was able to travel by foot and drive a car, shop in stores, and manage his money. He stated that he sometimes used a stick/cane. (Ex. 7E)… At the hearing, the claimant testified that he a single, and lives alone in a house. He is able to run his household, and does laundry, shops, cooks, and does dishes. He cleans, but states that he does not do so very well. He is able to yard work off and on, with difficulty. He watches television, and likes to walk. He reads, but says his focus is not very good. He has 3 to 6 friends that he sees once per week, visiting in their homes or taking walks together. (Hearing Testimony)… [T]aken as a whole, the evidence of record, including documentation of the claimant's good ability to perform activities of daily living and his ability to walk 1 mile 4-5 times per week, does not support greater limitations than those listed in the above RFC.

AR 22, 25.

The ALJ's statements invoke the reasoning that Plaintiff's subjective symptoms and difficulties were inconsistent with his relatively intact daily activities.  AR 25.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*.  Even where a

plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

Here, the ALJ noted that Plaintiff "acknowledged being generally able to perform personal care tasks, but stated that he wore slip on sandals, was cautious in the shower, and could not shave because of his hand shaking." AR 22; 249-250. The ALJ also noted that Plaintiff stated that he "was able to prepare meals, but had difficulty with housework" and he "was able to travel by foot and drive a car, shop in stores, and manage his money." AR 22; 249-253. The ALJ noted that Plaintiff wrote that he "was able to carry groceries from his truck to his house, and firewood from the woodpile into the house" and "was able to do most household chores, and some yard work." AR 22; 227 ("I carry groceries from the truck to the house and fire wood from the woodpile to the house in the winter…" "I sweep, vacuum, clean the bathroom, kitchen…"; Plaintiff further noted that he goes grocery shopping "several times a week" but tries to avoid stairs or lifting "anything that has much weight."). The ALJ further stated that Plaintiff testified that he "is able to run his household, and does laundry, shops, cooks, and does dishes." AR 22; 51-52 (Plaintiff testifying that he does his laundry, goes grocery shopping, cooks, and washes dishes). ALJ Burgchardt further noted that Plaintiff testified that he was "able to do yard work off and on, with difficulty" and "cleans, but states that he does not do so very well." AR 22; 53 (Plaintiff testifying that he cleans but not up to his standards and that he does yard work off and on but "not the quantity that [he] would like to be able to do."). ALJ Burgchardt also noted that Plaintiff testified to walking by himself and with friends. AR 22; 25; 47 (Plaintiff testifying that he walks around); 55 (Plaintiff testified that he "can easily do a mile on flat ground."). The Court therefore finds the ALJ appropriately discounted Plaintiff's subjective complaints given Plaintiff's demonstrated activities.

Plaintiff argues that the ALJ improperly "gave a boilerplate recitation" that "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 13 at 11, Doc. 17 at 4.) Specifically, Plaintiff argues that the ALJ did not reconcile her discounting of Plaintiff's subjective complaints with the limits Plaintiff testified to, including the amount of time he

could sit or stand unaided. (*Id.* at 13.) In support, Plaintiff cites the Ninth Circuit as holding that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by "simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488 (9th Cir. 2015).

In *Brown–Hunter*, the Ninth Circuit reiterated its holding that an ALJ errs "by making only a single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (citation and quotation marks omitted). There, the ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" *Id.* The Ninth Circuit found the ALJ's analysis erroneous and concluded that any such error was not harmless as it could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." *Id.* at 494. The failure to identify which testimony the ALJ found not credible and which evidence contradicted that testimony fell short of meeting the ALJ's responsibility to provide the reason or reasons upon which her adverse determination was based. *Id.* at 494-95 (citation omitted).

The Court finds this case distinguishable from *Brown–Hunter*. Here, the ALJ summarized portions of Plaintiff's subjective testimony regarding the persistence, intensity, frequency, and limiting effects of his pain. AR 22. For instance, the ALJ noted Plaintiff's subjective allegations that his ability to work was limited by difficulty "lifting, walking, sitting, using his hands, and doing all postural activities, as well as talking, completing tasks, concentrating, and getting along with others." *Id.* (ALJ also noted that Plaintiff "stated that he was limited by his back pain, pain and limited range of motion in his knees, painful lumps in his right hand and right foot, sinus problems causing coughing and vomiting, and irritable bowel syndrome.") In contrast, the ALJ also considered Plaintiff's hearing testimony that Plaintiff was able to walk, and accomplish tasks including doing laundry and dishes, doing yard work off and on, shopping, cooking, and cleaning. *Id.* *Brown–Hunter* is also

distinguishable because, as discussed above, the Court is able to "reasonably discern" the ALJ's path. *See*, *e.g.*, *Green v. Saul*, No. 1:19-cv-00058-BAM, 2020 WL 1227895, at *10 (E.D. Cal. Mar. 13, 2020) (distinguishing *Brown-Hunter* and noting that while the ALJ's opinion could have been more clearly stated, the court was able to reasonably discern the ALJ's path for the purpose of review), report and recommendation adopted, No. 1:19-cv-00058-NONE-BAM, 2020 WL 3496998 (E.D. Cal. June 29, 2020); *Hoefer v. Berryhill*, No. 1:17-cv-01695-BAM, 2019 WL 1283932, at *5, n. 5 (E.D Cal. Mar. 20, 2019) (same).

The Court therefore finds that the ALJ did not err in discounting Plaintiff's subjective complaints.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Vernon Grant Sanders.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

///
///
///
///

14

Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 30, 2023**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE